# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

ROBERT OLINATZ and GEORGE SIROIS, Individually on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

    v.

FOREST OIL CORPORATION,
PATRICK R. MCDONALD,
JAMES D. LIGHTNER,
JAMES H. LEE,
DOD A. FRASER,
LOREN K. CARROLL,
RAYMOND I. WILCOX,
RICHARD J. CARTY,
NEW FOREST OIL INC.,
FOREST OIL MERGER SUB INC.,
SABINE OIL & GAS LLC,
SABINE INVESTOR HOLDINGS LLC,
SABINE OIL & GAS HOLDINGS LLC, and
SABINE OIL & GAS HOLDINGS II LLC.,

Defendants.

---

## COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

---

## SUMMARY OF THE ACTION

1.     This is a shareholder class action brought by plaintiffs on behalf of all the holders of Forest Oil Corporation ("Forest Oil" or the "Company") common stock (the "Class") against Forest Oil and its affiliates, the members of Forest Oil's Board of Directors (the "Board" or "Individual Defendants"), and Sabine Oil & Gas LLC ("Sabine") and its affiliates.  This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at a potentially unfair price through an unfair and self-serving process to Sabine (the "Proposed Transaction").  Defendants announced on May 6, 2014, that the Board had agreed to sell Forest Oil to Sabine, a privately-held company, for 0.1 Sabine shares in exchange for each share of Forest Oil (the "Proposed Consideration").  As a result of the transaction, former Sabine unit holders will own approximately 73.5% percent and Forest Oil shareholders will own 26.5% of the outstanding Sabine common stock upon closing of the Proposed Transaction.

2.     Amazingly though, the Defendants have refused to provide Forest Oil shareholders enough basic information to assess the value of the Proposed Consideration.  Since there is currently no public market for the Sabine shares Forest Oil shareholders are expected to receive as part of the Proposed Transaction, they cannot properly evaluate the Proposed Transaction with publicly available information.  Though defendants have said at some future time they will disclose what they believe the shares of the post-closing company are worth, over a week has passed and they have still yet to do so.  Defendants, however, must know this information.  Otherwise, the Board would not have agreed to sell a controlling interest in Forest Oil for an unknown amount.

3.     Notwithstanding the defendants' material omission, it is evident that Sabine is attempting to take advantage of Forest Oil's depressed stock price, which is trading at five-year

lows.  The Company's recent performance, however, indicates that a strong turnaround for Forest Oil has already begun.  The Company's production greatly increased in 2013 and it was able to reduce its net debt by more than *50%*.  Moreover, the Company was able to overcome a *$1.3 billion* loss in 2012 to achieve nearly *$74 million* in net earnings in 2013.  In a call with financial analysts on February 26, 2014, defendant Patrick R. McDonald ("McDonald"), the Company's President, Chief Executive Officer ("CEO"), and a director, touted that Forest Oil was "able to accomplish a number of the strategic goals [management] set forth for 2013" and had a positive foundation for growth in 2014.

4.     Unfortunately, the Individual Defendants are attempting to prevent plaintiffs and the Class from realizing the benefits of the Company's strong financial results and bright future by inexplicably deciding to sell Forest Oil now—thus breaching their fiduciary duty to maximize shareholder value in connection with the Proposed Transaction.

5.     The Board further breached its fiduciary duties by agreeing to preclusive deal protection devices in connection with the Agreement and Plan of Merger the Company entered into on May 5, 2014 (the "Merger Agreement"), which all but ensure that the inadequate Proposed Transaction will be consummated.   These provisions, which further undermine shareholder value by precluding any competing offers for the Company from emerging, include: (i) a no-solicitation provision prohibiting the Company from properly shopping itself; (ii) a three business-day matching rights period during which Sabine has the option to match any superior proposal received by the Company; and (iii) a termination fee of $15 million payable by the Company to Sabine in the event that, among other things, an unsolicited superior offer materializes and is accepted.  Collectively, these provisions reflect an attempt by the Individual Defendants to lock up the Proposed Transaction at a price that grossly undervalues the Company,

- 2 -

thereby securing for themselves the personal financial benefits they have negotiated for themselves in connection with the closing of the Proposed Transaction.

6.      Though the Board is intent on cashing out Forest Oil shareholders at a potentially unfair price, the Individual Defendants will receive immediate benefits upon the closing of the Proposed Transaction.   Defendant McDonald will receive the biggest windfall upon consummation of the Proposed Transaction, including a cash severance payment equal to *2.5 times* the sum of his annual salary and annual bonus and vesting of all his all outstanding stock options, restricted stock, and cash-settled phantom stock units.  The completion of the Proposed Transaction will also trigger change-of-control provisions for holders of Forest Oil's existing senior notes.  These change-of-control provisions entitle the holders of the senior notes to receive 101% of the principal amount of the notes plus accrued interest with respect to each series of notes.  In addition, the Individual Defendants have ensured that at least two of the members of the Board will retain their prestigious positions following completion of the Proposed Transaction.

7.      In pursuing the unlawful plan to sell the Company via an unfair process and at a potentially inadequate price, each of the defendants has violated applicable law by directly breaching and/or aiding and abetting the other defendants' breaches of their fiduciary duties of loyalty and due care, among others.  This action seeks to enjoin the Individual Defendants from further breaching their duties in connection with the Proposed Transaction.  Specifically, to remedy the defendants' legal violations as set-forth herein, plaintiffs seek, inter alia: (i) additional material information concerning the value of the Proposed Consideration; (ii) injunctive relief preventing consummation of the Proposed Transaction unless and until the Company adopts and implements a procedure or process designed to obtain a transaction that provides the best

possible terms for shareholders; (iii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Forest Oil's shareholders; and (iv) rescission of, to the extent already implemented, the Merger Agreement or any of the terms thereof.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Forest Oil maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff Robert Olinatz is, and at all times relevant hereto, was a shareholder of Forest Oil.  Olinatz is a citizen of Connecticut.

12.     Plaintiff George Sirois is, and at all times relevant hereto, was a shareholder of Forest Oil.  Sirois is a citizen of Rhode Island.

13.     Defendant Forest Oil is a New York corporation with principal executive offices located at 707 17th Street, Suite 3600, Denver, Colorado.  Accordingly, defendant Forest Oil is a citizen of New York and Colorado.  Defendant Forest Oil is an independent oil and gas company engaged in the acquisition, exploration, development, and production of oil, natural gas, and natural gas liquids primarily in North America.  Defendant Forest Oil recorded net earnings of $74 million in 2013 as compared to a net loss of $1.3 billion in 2012.  Upon completion of the Proposed Transaction, Forest Oil will become a wholly-owned subsidiary of defendant New Forest Oil Inc. ("New Forest Oil"), which will be renamed Sabine Oil & Gas Corporation.

14.     Defendant McDonald is Forest Oil's President and CEO and has been since September 2012 and a director and has been since 2004.  Defendant McDonald was also Forest Oil's Interim CEO from June 2012 to September 2012.  Defendant McDonald is a citizen of Colorado.

15.     Defendant James D. Lightner ("Lightner") is Forest Oil's non-executive Chairman of the Board and has been since May 2008 and a director and has been since 2004.  Defendant Lightner is a citizen of Colorado.

16.     Defendant James H. Lee ("Lee") is a Forest Oil director and has been since 1991.  Defendant Lee is a citizen of Texas.

17.     Defendant Dod A. Fraser ("Fraser") is a Forest Oil director and has been since 2000.  Defendant Fraser is a citizen of New York.

18.     Defendant Loren K. Carroll ("Carroll") is a Forest Oil director and has been since 2006.  Defendant Carroll is a citizen of California.

19.     Defendant Raymond I. Wilcox ("Wilcox") is a Forest Oil director and has been since 2009.  Defendant Wilcox is a citizen of Texas.

20.     Defendant Richard J. Carty ("Carty") is a Forest Oil director and has been since October 2012.  Defendant Carty is a citizen of New York.

21.     Defendant New Forest Oil is a Delaware corporation and wholly-owned subsidiary of defendant Forest Oil with principal executive offices located at 707 17th Street, Suite 3600, Denver, Colorado.  Accordingly, defendant New Forest Oil is a citizen of Delaware and Colorado.  Upon completion of the Proposed Transaction, defendant New Forest Oil will be renamed Sabine Oil & Gas Corporation and will become the ultimate parent of Forest Oil.

22.     Defendant Forest Oil Merger Sub Inc. ("Merger Sub") is a New York corporation and wholly-owned subsidiary of defendant New Forest Oil with principal executive offices located 707 17th Street, Suite 3600, Denver Colorado.  Accordingly, defendant Merger Sub is a citizen of New York and Colorado.  Upon completion of the Proposed Transaction, defendant Merger Sub will merge with and into defendant Forest Oil and cease its separate corporate existence.

23.     Defendant Sabine is a Delaware limited liability company with principal executive offices located at 1415 Louisiana Street, Suite 1600, Houston, Texas.  Accordingly, defendant Sabine is a citizen of Delaware and Texas.  Defendant Sabine is an independent energy company engaged in the acquisition, production, exploration, and development of

onshore oil and natural gas properties in the United States.  During the Proposed Transaction, defendant Sabine will merge with and into Forest Oil, and will cease its separate existence.

24.    Defendant Sabine Investor Holdings LLC ("New Sabine") is a Delaware limited liability company with principal executive offices located at 1415 Louisiana Street, Suite 1600, Houston, Texas.  Accordingly, defendant New Sabine is a citizen of Delaware and Texas.  Upon closing of the Proposed Transaction, defendant New Sabine will directly and indirectly contribute to defendant New Forest all of the outstanding equity of defendant Sabine Oil & Gas Holdings LLC ("Sabine Holdings") in exchange for 33,013,641 shares of defendant New Forest Oil's common stock.

25.    Defendant Sabine Holdings is a Delaware limited liability company with principal executive offices located at 1415 Louisiana Street, Suite 1600, Houston, Texas.  Accordingly, defendant Sabine Holdings is a citizen of Delaware and Texas.  Upon closing of the Proposed Transaction, defendant Sabine Holdings will become a wholly owned subsidiary of defendant New Forest Oil.

26.    Defendant Sabine Oil & Gas Holdings II LLC ("SOGH II") is a Delaware limited liability company and a wholly owned subsidiary of defendant Sabine Holdings with principal executive offices located at 1415 Louisiana Street, Suite 1600, Houston, Texas.  Accordingly, defendant SOGH II is a citizen of Delaware and Texas.  During the Proposed Transaction, defendant SOGH II will merge with and into Forest Oil, and will cease its separate existence.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

27.    Under New York law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a breakup of the corporation's assets, the directors have an affirmative fiduciary obligation to

obtain the highest value reasonably available for the corporation's shareholders, including a significant premium at the highest price attainable in the market.  Because control of Forest Oil is going from a large fluid market (the members of the Class) to a select, small group of affiliated investors, the Individual Defendants' duty to attain the best possible price for shareholders is triggered.  To diligently comply with these duties, neither the directors nor the officers may take any action that:

> (a)     adversely affects the value provided to the corporation's shareholders;

> (b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

> (c)     contractually prohibits themselves from complying with their fiduciary duties;

> (d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

> (e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Forest Oil, are obligated under New York law to refrain from:

> (a)     participating in any transaction where the directors' or officers' loyalties are divided;

> (b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)  unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.  The Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches, including their duties of loyalty, good faith, and independence owed to plaintiffs and other public shareholders of Forest Oil.

30.  Defendants are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiffs or the Class (as defined herein).  Accordingly, the Proposed Transaction will benefit the Individual Defendants in significant ways not shared with Class members.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiffs nor the Class will receive adequate or fair value for their Forest Oil common stock in the Proposed Transaction.

## THE PROPOSED TRANSACTION

31.  On May 6, 2014, Forest Oil and Sabine issued a joint press release announcing the Proposed Transaction.  The press release explained that Sabine and Forest Oil will combine their businesses in an all-stock transaction to form Sabine Oil & Gas Corporation, which is expected to list on the New York Stock Exchange under the ticker "SABO."  Notably, upon completion of the combination transaction, Sabine unit holders (which consist almost entirely of the private equity fund First Reserve Fund XI, L.P. and its affiliates) will own approximately 73.5% of the new combined entity and Forest Oil shareholders will own approximately 26.5%.  The press release stated:

> Sabine Oil & Gas LLC ("Sabine") and Forest Oil Corporation (FST) ("Forest"),
>
> today announced the signing of a definitive merger agreement under which
>
> Sabine and Forest will combine their businesses in an all-stock transaction. Sabine

and Forest's highly complementary asset portfolios will create one of the industry's largest East Texas players, benefiting from drilling program optimization and economies of scale. The combination is also strengthened by a sizable collective Eagle Ford position, as well as Granite Wash, Permian and Arkoma positions that provide optionality for development and monetization.

***Upon completion of the combination transaction, Sabine unit holders will own approximately 73.5 percent of the new combined entity and Forest shareholders will own approximately 26.5 percent***. The combined entity, named Sabine Oil & Gas Corporation, will be a newly formed parent company expected to list on the New York Stock Exchange under the symbol "SABO". The combined entity will be headquartered in Houston, Texas, and be led by Sabine's current executive management team. The transaction is expected to be tax-free to Forest's shareholders.

*   *   *

**TERMS OF THE TRANSACTION**

***Under the terms of the agreement, Sabine and Forest Oil will combine their businesses under a newly formed holding company, Sabine Oil & Gas Corporation ("Sabine Oil & Gas"). Forest Oil will merge with a subsidiary of Sabine Oil & Gas and survive as a subsidiary of Sabine Oil & Gas. As part of the transaction, each share of Forest Oil common stock will be converted into 0.1 of a share of Sabine Oil & Gas common stock, designed to replicate a 10:1 reverse stock split***. Concurrent with the merger, Sabine's parent entity will contribute all of its equity interest in Sabine to Sabine Oil & Gas, in exchange for

which it will receive approximately 33 million shares of Sabine Oil & Gas common stock. As a result of the transaction, former Sabine unit holders and Forest Oil shareholders will own approximately 73.5% percent and 26.5% percent, respectively, of the outstanding Sabine Oil & Gas common stock upon closing of the combination.

*The boards of directors of Sabine and Forest have each unanimously approved the transaction and Forest is recommending approval of the transaction to its shareholders*. Consummation of the transaction is subject to approval by the Forest shareholders, regulatory approvals and other customary closing conditions. The transaction is expected to close in the third or fourth quarter of 2014.

Upon completion of the transaction, David Sambrooks will serve as Chairman of the Board of Directors of Sabine Oil & Gas as well as President and Chief Executive Officer. Shane Bayless will serve as Executive Vice President and Chief Financial Officer and Todd Levesque will serve as Executive Vice President and Chief Operating Officer. *The Board of Directors of the combined entity will be comprised of the existing six Sabine board members, as well as two of the current Forest board members*. At closing, it is expected that at least a majority of the directors will be independent under NYSE rules.

*The completion of this transaction will trigger change-of-control provisions in the indentures governing Forest's existing senior notes. These change-of-control provisions entitle holders of the notes to receive 101 percent of the principal amount of the notes plus accrued interest with respect to each series of notes*. Sabine expects that any of Forest's notes that are not tendered pursuant

to the change of control offers will remain outstanding following the transaction, subject to any opportunistic refinancing of such notes Sabine Oil & Gas may pursue based on market conditions.

32.     On May 6, 2014, the Company filed a Current Report on Form 8-K with the U.S. Securities and Exchange Commission ("SEC") wherein it disclosed the Merger Agreement. Collectively, the announcement of the Proposed Transaction and the filing of the Merger Agreement reveal that the Proposed Transaction is the product of a flawed sale process.  The Merger Agreement further reveals that the Individual Defendants agreed to a number of draconian deal protection devices designed to preclude any competing bids for Forest Oil from emerging in the period following the announcement of the Proposed Transaction.  As the Individual Defendants were duty bound to maximize shareholder value in connection with the Proposed Transaction, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

33.     Specifically, section 6.4 of the Merger Agreement subjects Forest Oil to a strict no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders.  Section 6.4(a) states that:

Except as expressly permitted by this Section 6.4, Forest shall, and shall cause each of its Subsidiaries and its and their respective directors and officers and shall use reasonable best efforts to cause its and their Representatives to, (i) *immediately cease and terminate any solicitation, encouragement, knowing facilitation, discussions, negotiations or other similar activities with any Persons other than New Sabine Holdings and its Affiliates and its and their Representatives that may be ongoing with respect to, or that may reasonably be*

*expected to lead to, an Acquisition Proposal*; and (ii) immediately revoke or withdraw access of any Person other than New Sabine Holdings and its Affiliates and its and their Representatives to any data room (virtual or actual) containing any non-public information with respect to Forest or its Subsidiaries previously furnished with respect to any Acquisition Proposal and request or require (to the fullest extent permitted under any confidentiality agreement or similar agreement with such Person) such Person to promptly return or destroy, as elected by Forest, all confidential information concerning Forest and its Subsidiaries.

34.     Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, it may only do so in the rare event that the potential acquirer first makes a "bona fide, written" acquisition proposal which the Board determines, in good faith and after consultation with its financial and legal advisors, is "superior" to the Proposed Transaction.   Collectively, the inability of the Company to provide any non-public information to, much less communicate with, any third-party regarding a potential transaction—as well as the fact that section 6.4(b) of the Merger Agreement requires Forest Oil to notify Sabine of any potentially competing inquiry or offer it receives—renders the purported "fiduciary out" provision illusory and the likelihood of any rival bidder emerging, at best, miniscule.

35.     The likelihood of another offer emerging is even further reduced by the "matching rights" provision contained in section 6.4(f) of the Merger Agreement.  This provision requires the Company to provide Sabine with copies of the superior proposal and affords Sabine a remarkable three business-day window within which to consider and match the terms of any superior proposal received by the Company, thereby further dissuading any competing bidders

from emerging.  Specifically, section 6.4(f) states that the Board of the Company shall not make a Change of Recommendation unless:

[P]rior to taking such action (i) Forest has given New Sabine Holdings at least three (3) Business Days' prior written notice of its intention to take such action (which notice shall specify the material terms and conditions of any such Superior Proposal (including the identity of the Person making such Superior Proposal)) and has contemporaneously provided to New Sabine Holdings a copy of any proposed transaction agreements with the Person making such Superior Proposal, (ii) Forest has negotiated, and has caused its Representatives to negotiate, in good faith with New Sabine Holdings (in each case, if New Sabine Holdings seeks to negotiate with Forest) during such notice period to enable New Sabine Holdings to revise the terms of this Agreement such that it would cause such Superior Proposal to no longer constitute a Superior Proposal, (iii) following the end of such notice period, the Forest Board shall have considered in good faith any changes to this Agreement proposed in writing by New Sabine Holdings, and shall have determined in good faith, after consultation with its financial advisor and outside legal counsel, that notwithstanding such proposed changes, the third party proposal remains a Superior Proposal, and (iv) Forest has complied in all material respects with its obligations under this Section 6.4. Any amendment to the financial terms or other material terms of a Superior Proposal after delivery of a notice in respect of such Superior Proposal shall require delivery of another notice and shall commence a new three (3) Business Day notice period in respect of such Superior Proposal pursuant to this Section 6.4(f) shall commence. No

Forest Recommendation Change shall change the approval of this Agreement for purposes of Section 902 of the NYBCL, and in no event shall Forest or the Forest Board be permitted to rescind or amend the resolutions approving this Agreement as in effect on the Execution Date. No Forest Recommendation Change shall have the effect of causing any state (including New York) corporate Takeover Law or other similar statute to be applicable to the transactions contemplated by this Agreement (including the Transactions).

36.     Section 8.3(b) of the Merger Agreement subjects Forest Oil to another preclusive deal-protection provision in the form of a $15 million termination fee payable to Sabine should a superior proposal ultimately be accepted.  This additional consideration would be paid directly to Sabine rather than Forest Oil shareholders, thereby making it even more difficult for any competing bidder to acquire the Company.

37.     Collectively, these onerous and preclusive deal protection devices operate in conjunction to ensure that no competing offers will emerge for the Company and that the patently inadequate Proposed Transaction is consummated, thereby guaranteeing that the Individual Defendants (along with certain other officers of Forest Oil) will secure the personal financial benefits they negotiated for themselves in connection with the consummation of the Proposed Transaction. Accordingly, the Individual Defendants' efforts to put their own personal interests before those of the Company's shareholders have resulted in the Proposed Transaction being presented to Forest Oil shareholders at a potentially untenable and inadequate offer price which, arguably, cannot be topped by a competing bidder.

## FAILURE TO MAXIMIZE SHAREHOLDER VALUE

38.     The Individual Defendants' fiduciary duties require them to maximize shareholder value when entering into a change-in-control transaction such as the Proposed Transaction. Here, however, the Individual Defendants have not even provided Forest Oil shareholders enough basic information to assess the value of the Proposed Consideration.  Since there is currently no public market for the Sabine shares Forest Oil shareholders are receiving as part of the Proposed Transaction, they cannot properly evaluate the Proposed Transaction and determine whether the Proposed Consideration to be paid by Sabine in the merger reflects the true inherent value of Forest Oil.

39.     It does appear, however, that Sabine is attempting to take advantage of Forest Oil's recently depressed stock price.  Indeed, just prior to the announcement of the Proposed Transaction, the Company's stock was trading at five-year lows.  Nevertheless, the Company's recent performance indicates that a strong turnaround for Forest Oil has already begun.

40.     The Company recently has reversed a downward trend and is becoming profitable.  According to Forest Oil's Annual Report on Form 10-K filed with the SEC on February 26, 2014, the Company was able to overcome a $1.3 billion loss in 2012 to achieve nearly $74 million in net earnings in 2013.  In a call with financial analysts on February 26, 2014, defendant McDonald, the Company's President, CEO, and a director, discussed the factors that contributed to the Company's improvement.  Specifically, defendant McDonald stated that the Company was "able to accomplish a number of the strategic goals [management] set forth for 2013.  [The Company's] objectives were to accelerate the development of [its] oil assets, principally the Eagle Ford; improve [its] operational focus by directing [the Company's] efforts

to the assets where [it] had a confidence and resources development, and importantly, to reduce the debt level of the company."

41.     In addition, the Company's production greatly increased in 2013.  As defendant McDonald explained, "[o]il and liquids volume increased over [2013] as net oil sales volumes grew by 55%, net liquid sales volume grew 41% compared to 2012 pro forma for divestitures. [The Company's] oil reserves grew by 30%.  [Management] believe[s] this trend will continue in 2014."

42.     Defendant McDonald also discussed the progress made in developing the Company's Eagle Ford assets through a joint development agreement.  Defendant McDonald touted the benefits of the agreement, such as "providing the capital required to increase the drilling activity as well as access to impressive technology, which will pay benefits now and in the future."

43.     Moreover, the Company was able to significantly reduce its debt through the sale of its Texas Panhandle and South Texas assets, which generated cash proceeds of approximately $1.3 billion.  As of the end of 2013, the Company was able to reduce its net debt by more than 50% from the end of 2012.

44.     Regarding the Company's outlook for 2014, Victor A. Wind, the Company's Executive Vice President and Chief Financial officer stated, "[Forest Oil's] equivalent net sales volumes are expected to increase on a quarterly basis throughout 2014, although [the Company] should see a notable uptick in second-half volumes compared to the first half as [the Company] benefit[s] from the increased Ark-La-Tex activity....  Carrying the growth trajectory of this program forward into 2015, one could reasonably assume [the Company would] have robust growth in 2015 over 2014."

45.     Accordingly, Forest Oil is poised for a significant recovery despite its depressed stock price.  However, the Proposed Transaction comes at a time when Sabine can acquire the Company at a bargain price and reap an outsized portion of the rewards of Forest Oil's recovery.

46.     In addition to taking advantage of the momentum in Forest Oil's recovery, there are substantial synergies created by the merger.  Sabine and Forest Oil's highly complementary asset portfolios will create one of the industry's largest East Texas players, benefiting from drilling program optimization and economies of scale.  The combination is also strengthened by a sizable collective Eagle Ford position, as well as Granite Wash, Permian, and Arkoma positions that provide opportunities for development and monetization.  The combined company will have estimated proved reserves of 1.50 trillion cubic feet and estimated daily production of 345 million cubic feet for 2014, giving the new company a leading position among its industry peers in production and cash flow growth.  With defendants' failure to provide financial information about the post-closing company, there is no way to know whether members of the Class are being fairly compensated for the synergies detailed herein.

**THE INSIDER BENEFITS PROVIDED BY THE PROPOSED TRANSACTION**

47.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, and not structure a preferential deal for themselves.  Here, however, the Individual Defendants have disloyally placed their own interests first, and tailored the terms of the Proposed Transaction so as to aggrandize their own financial position.

48.     Defendant McDonald, the Company's CEO and a director, will receive the biggest windfall upon consummation of the Proposed Transaction including a cash severance payment equal to 2.5 times the sum of his annual salary and annual bonus and vesting of all his all

outstanding stock options, restricted stock, and cash-settled phantom stock units.  As stated in the Company's Schedule 14A Proxy Statement filed with the SEC on March 26, 2014, following the Proposed Transaction, defendant McDonald will be entitled to receive:

- *a cash severance payment consisting of a lump sum payment in an amount equal to 2.5 times the sum of his … annual salary and annual bonus*;

  * * *

- *vesting of all outstanding stock options, restricted stock, and cash-settled phantom stock units* to the extent described in the applicable award agreement;

  * * *

- with respect to the performance unit awards granted prior to October 1, 2012, [defendant MacDonald] will be entitled to receive a number of shares of common stock that would have been earned based on Forest's total shareholder return in comparison to its peer companies, assuming the date of the change-of-control as the last day of the performance period [which may be settled in cash at the discretion of the Compensation Committee];

  * * *

- with respect to the performance unit awards granted on or after October 1, 2012, if the successor entity does not assume or replace such awards with awards substantially similar in all material respects, [defendant MacDonald] will be entitled to receive a number of shares of common

stock, or an amount of cash, that would have been earned based on Forest's total shareholder return in comparison to its peer companies, assuming the date of change-of-control as the last day of the performance period [which may be settled in cash at the discretion of the Compensation Committee].

49.     The completion of the Proposed Transaction will also trigger change-of-control provisions for holders of Forest Oil's existing senior notes.  These change-of-control provisions entitle holders of the notes to receive 101% of the principal amount of the notes plus accrued interest with respect to each series of notes.

50.     In addition, the Board has ensured that at least two of its members will retain their prestigious positions following completion of the Proposed Transaction.  As such, the board of directors of the combined entity will be comprised of the existing six Sabine board members, as well as two of the current Forest Oil Board members.

51.     In short, the Proposed Transaction is wrongful, unfair, and harmful to Forest Oil's public stockholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class. Specifically, defendants are attempting to deny plaintiffs and the Class their shareholder rights through the sale of Forest Oil via a potentially unfair process.   Accordingly, the Proposed Transaction will benefit the Individual Defendants at the expense of Forest Oil shareholders.

52.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, and not structure a preferential deal for themselves.  Due to the Individual Defendants' eagerness to enter into a transaction with

Sabine, they failed to implement a process to obtain the maximum price for Forest Oil shareholders.

53.     As a result of defendants' conduct, Forest Oil's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of Forest Oil and allow the shares to trade freely—without impediments such as the aforementioned no-solicitation, matching rights, and termination fee provisions;

- Act independently so that the interests of Forest Oil's public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Forest Oil's public stockholders; and

- Solicit competing bids to Sabine's offer without the impediments listed above to ensure that the Company's shareholders are receiving the maximum value for their shares.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action individually and as a class action on behalf of the Class comprised of all holders of Forest Oil common stock who are being harmed by defendants' actions as described above.  Excluded from the Class are the defendants and any individual or entity related to, or affiliated with, any defendant.

55.     This action is properly maintainable as a class action.

56.     The Class is so numerous that joinder of all members is impracticable.  According to the Merger Agreement there are over 119 million shares of Forest Oil common stock outstanding as of May 2, 2014.

57.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, good faith, diligence, fair dealing, independence, and/or due care with respect to plaintiffs and the other members of the Class in connection with the Proposed Transaction;

(b)     whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiffs and the other members of the Class in connection with the Proposed Transaction;

(c)     whether the Individual Defendants are conflicted or otherwise engaging in self-dealing in connection with the Proposed Transaction;

(d)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiffs and the other members of the Class in connection with the Proposed Transaction;

(e)     whether the Individual Defendants are unjustly enriching themselves and/or the other insiders/affiliates of Forest Oil in connection with the Proposed Transaction;

(f)     whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(g)      whether Forest Oil, New Forest Oil, and Merger Sub aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiffs and the other members of the Class in connection with the Proposed Transaction;

(h)      whether Sabine, New Sabine, Sabine Holdings, and SOGH II aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiffs and the other members of the Class in connection with the Proposed Transaction; and

(i)      whether plaintiffs and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

58.      The prosecution of separate actions by individual members of the Class would: (i) create a risk of inconsistent or varying adjudications with respect to individual members of the Class; (ii) establish incompatible standards of conduct for defendants; and/or (iii) result in adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not party to those adjudications thereby substantially impairing (or entirely impeding) their ability to protect their own personal interests.

59.      Plaintiffs, whose claims are typical of the other Class members, are committed to prosecuting this action and have retained competent counsel who will draw on their extensive experience litigating actions of this nature in order to fairly and adequately represent and protect the interests of plaintiffs and the Class.

60.      Plaintiffs do not have any interests adverse to the Class.  Accordingly, there will be no difficulty in the management of this litigation as a class action.  Indeed, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

**Claim Against the Individual Defendants for Breach of Fiduciary Duties**

62.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

63.     The Individual Defendants have violated the fiduciary duties of care, loyalty, and independence owed to the public shareholders of Forest Oil and have acted to put their personal interests ahead of the interests of Forest Oil shareholders.

64.     By the acts, transactions, and course of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiffs and other members of the Class of the true value inherent in and arising from Forest Oil.

65.     The Individual Defendants have violated their fiduciary duties by entering Forest Oil into the Proposed Transaction without regard to the effect of the proposed transaction on Forest Oil shareholders.

66.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and independence owed to the shareholders of Forest Oil because, among other reasons:

(a)     they failed to take steps to maximize the value of Forest Oil to its public shareholders;

(b)     they failed to properly value Forest Oil and its various assets and operations; and

(c)      they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

67.      Because the Individual Defendants dominate and control the business and corporate affairs of Forest Oil, and are in possession of or have access to private corporate information concerning Forest Oil's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Forest Oil which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

68.      By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiffs and the other members of the Class.

69.      The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiffs and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

70.      As a result of the Individual Defendants' unlawful actions, plaintiffs and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Forest Oil's assets and operations.  Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiffs and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms, and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

71.     Plaintiffs and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiffs and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against Forest Oil, New Forest Oil, and Merger Sub

72.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

73.     The Individual Defendants owed to plaintiffs and the members of the Class certain fiduciary duties as fully set out herein.

74.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

75.     Defendants Forest Oil, New Forest Oil, and Merger Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiffs and the members of the Class.

76.     Plaintiffs and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT III

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against Sabine, New Sabine, Sabine Holdings, and SOGH II

77.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

78.     The Individual Defendants owed to plaintiffs and the members of the Class certain fiduciary duties as fully set out herein.

79.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

80.     Defendants Sabine, New Sabine, Sabine Holdings, and SOGH II colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiffs and the members of the Class.

81.     Defendants Sabine, New Sabine, Sabine Holdings, and SOGH II participated in the breach of the fiduciary duties by the Individual Defendants, for the purpose of advancing their own interests.  Defendants Sabine, New Sabine, Sabine Holdings, and SOGH II obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  Defendants Sabine, New Sabine, Sabine Holdings, and SOGH II will benefit from the acquisition of the Company at an inadequate and unfair price if the Proposed Transaction is consummated.

82.     Plaintiffs and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand injunctive relief, in their favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Merger Agreement was negotiated and/or executed in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.     Rescinding, to the extent already implemented, the Merger Agreement;

- 27 -

D.     Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure reasonably designed to provide the best possible value for shareholders;

E.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sales process that is reasonably designed to secure the best possible consideration for Forest Oil and obtain a transaction which is in the best interests of Forest Oil's shareholders;

F.     Imposition of a constructive trust in favor of plaintiffs and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G.     Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.     Granting such other and further equitable relief as deemed just and proper.

Dated: May 19, 2014

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER


                        s/Brian J. Robbins
                       BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbisnsarroyo.com
jrieger@robbinsarroyo.com

Attorneys for Plaintiffs

956411